**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geoffrey H Slepian, | No. CV-23-08105-PCT-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Pink Jeep Tours LLC, Pink Adventure Holdings LLC, and Herschend Adventure Holdings LLC, | |
| Defendants. | |

Plaintiff Geoffrey H. Slepian worked as a guide for defendants Pink Jeep Tour Arizona, LLC and Herschend Adventure Holdings, LLC (collectively "Pink Jeep"), which operate guided jeep tours in Arizona. Slepian is the original plaintiff in this collective action involving similarly-situated guides and alleges Pink Jeep failed to pay minimum wages and overtime compensation required by the Fair Labor Standards Act ("FLSA"). The parties filed cross motions for summary judgment addressing the core disputes of whether guides must be compensated for between-tour waiting time on scheduled workdays and for time spent monitoring Pink Jeep's tour-assignment system. Pink Jeep's motion is denied, while Slepian's is granted in part and denied in part.

## I.    Background

Pink Jeep provides scenic tours in Sedona and Tusayan, Arizona. (Doc. 132-2 at 5.) Plaintiffs are a sixteen-person collective of Pink Jeep tour guides. (Doc. 144 at 32.)

Guides are scheduled to work on particular days and are assigned tours throughout

those scheduled workdays. (Docs. 132-2 at 13; 132-4 at 27.) Tours are scheduled at the top of every hour and sometimes every half-hour. (Docs. 132-2 at 13; 132-4 at 27.)

Pink Jeep uses an application for assigning tours to guides known as "the Gantt." (Doc. 132-4 at 9.) The Gantt is used to manage tour assignments and includes a queue indicating which guides are next in line for assignment based on booking and scheduling variables. (Doc. 60-7 at 40.) A guide's position in the queue is determined by several factors, including how many and what type of tours have booked and the scheduled departure times. (*See* Docs. 60-7 at 74–86; 62-3 at 2–40.) The queue updates throughout the day, and guides near the front of the queue may be referred to as "on point." (Doc. 135-2 at 19, 31.) Pink Jeep provided training—including a complicated 39-page slide deck (Doc. 62-3 at 2–40)—and written guidance regarding how guides should interpret and use the Gantt. (Doc. 60-7 at 40, 74–86.) Guides can check the Gantt through a mobile application on their phones or on a computer in the guide break room at Pink Jeep's location. (Doc. 132-3 at 3.)

Pink Jeep's expectation that guides be ready to take tours on short notice requires them to regularly monitor the Gantt for updates. (Docs. 60-7 at 40–41, 80; 132-2 at 9; 132-3 at 3.) Pink Jeep instructs guides that "regardless of status" in the queue, they must be prepared to staff a tour, "assume [they] have back to back" tours, and "check in often" on the Gantt to confirm staffing assignments. (Doc. 60-7 at 80.) Guides who fail to monitor the schedule such that they either miss an assigned tour or are not available to take a tour within five minutes after the hour are subject to progressive discipline under Pink Jeep's attendance policy. (Doc. 135-2 at 27.)

Tours may be scheduled close to their departure time, including within minutes of the start of the tour. (Docs. 135-6 at 10; 135-9 at 13.) During the busy season, multiple tours can book quickly, including five or more tours in less than an hour. (Docs. 60-7 at 40; 135-2 at 20.) Guides must remain available for any tour that books to them. (Doc. 135-2 at 10.) When a tour is scheduled to depart, the assigned guide must report to the departure location in uniform. (Doc. 132-4 at 11–12.) Guides who are first or second "on

point" are expected to remain at the departure sites until the top of the hour. (Docs. 60-7 at 80; 135-3 at 8–9.) Additionally, guides are sometimes instructed to stay on site five to ten minutes past the hour to cover tours that book late. (Doc. 132-4 at 26.) Guides are not compensated for time spent waiting to be assigned tours (including when they are "on point") unless they complete discrete assignments such as clearing trail debris or shoveling snow. (Docs. 132-3 at 3; 158-1 at 111.)

Under company policy, guides are technically free to leave company property between tours. (Doc. 60-7 at 46.) Many guides find this impractical and remain close to departure sites on scheduled workdays because they are required to be ready to staff a tour within minutes. (*E.g.*, Docs. 132-8 at 5–7 ("[N]o one ever told you that you had to stay" at the worksite but they still "[felt] that you have to stay"); 132-9 at 12 ("[T]he policy clearly states you are not required to stay on the premises, but that's kind of a catch 22. If I don't stay on the premises, I might miss the tour."); 132-10 at 3, 10 (although formal policy did not require remaining at the worksite, stayed in a "two-block radius" because was "fearful that the Gantt would change" and would miss a tour); 132-11 at 5 (remained "100 square yards" from the worksite); 132-12 at 6 ("You are required to be there, not on-site, but you're required to be ready at certain times whether or not you're getting anything."); 132-13 at 3 ("I'm compelled to be there because, again, I could be punished if I miss a tour").)

Slepian asserts two FLSA claims on behalf of a collective comprised of himself and fifteen other current and former guides: the failure to properly pay overtime under 29 U.S.C. § 207, and failure to properly pay minimum wage under 29 U.S.C. § 206. (Docs. 1 at 13–16; 146 at 3.) As an individual, Slepian also brings claims for failure to pay minimum wage under A.R.S. § 23-362 and failure to timely pay wages due under A.R.S. § 23-350. (Docs. 1 at 16–19; 29 at 2.)

The collective seeks partial summary judgment that under the FLSA (1) between-tour waiting time on scheduled workdays is compensable and (2) time spent checking or monitoring the Gantt is compensable. (Doc. 144 at 8–9, 16–18.) Pink Jeep seeks

summary judgment in the opposite direction, claiming that time spent monitoring the Gantt is not compensable. Beyond Gantt-checking time, Pink Jeep also seeks summary judgment arguing plaintiffs are unable to prove damages with the provided evidence, "gap time" recovery is unavailable under the FLSA, Slepian did not have a "reasonable expectation" of payment for the disputed categories such that his Arizona wage statute claim is doomed, and treble damages are unavailable under the same statute due to a reasonable good-faith dispute. (Doc. 146 at 2.)

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.    Analysis

### A. Compensability of Waiting Time Between Tours

Plaintiffs seek partial summary judgment that guides' between-tour waiting time was compensable work under the FLSA. FLSA's compensability inquiry turns on whether the employee is "engaged to wait" or "waiting to be engaged." *Owens v. Loc.*

- 4 -

*No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992), *as amended* (Aug. 18, 1992) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Idle time is compensable only when "the employee is unable to use the time effectively for his own purposes." *Owens*, 971 F.2d at 350 (quoting 29 C.F.R. § 785.15). Courts consider seven non-exhaustive factors to determine whether an employee is "so restricted during on-call hours as to be effectively engaged to wait."[1] *Id.* at 351, 354. No one factor is determinative. *Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 936 (9th Cir. 2004). Courts use the *Owens* factors to determine "whether [an employee] is so restricted during on-call hours as to be effectively engaged to wait" or if, conversely, he could use this time as his own. *Kennedy v. Las Vegas Sands Corp.*, 110 F.4th 1136, 1146 (9th Cir. 2024). An employee who an employer engages to wait must be compensated, whereas employees who can use waiting times effectively for their own purposes need not be. *Owens*, 971 F.2d at 350. The two predominant factors in determining whether an employee's on-call waiting time is compensable are "(1) the degree to which the employee is free to engage in personal activities; and (2) the agreements between the parties." *Id.*

Viewing the record in the light most favorable to Pink Jeep, there are disputed issues of material fact regarding whether, and to what extent, guides could use between-tour time for their own purposes. Plaintiffs emphasize that tours often book close to departure, guides must be available on short notice, and the combination of assignment volatility and progressive discipline effectively requires guides to remain at or near the departure sites, arguing this precludes them from effectively using waiting time for their own purposes. (Doc. 144 at 3–6, 8–16.) In opposition, Pink Jeep points to written policies describing between-tour time as "personal time" and providing for advance notice before tours, and evidence that guides were permitted to leave company property and engage in

---

[1] The factors are whether (1) there was an on-premises living requirement; (2) there were excessive geographical restrictions on the employees' movements; (3) the frequency of calls was unduly restrictive; (4) a fixed time limit for responding was unduly restrictive; (5) an on-call employee could easily trade on-call responsibilities; (6) use of a pager could ease restrictions; and (7) the employee could actually engage in personal activities during on-call time. *Owens*, 971 F.2d at 350.

personal activities until required to report for a scheduled tour. (Doc. 162-1 at 7, 9, 11, 16–17.)

These competing accounts create genuine factual disputes regarding several considerations central to whether guides were "engaged to wait," including the practical geographic constraints on guides between tours (Docs. 132-6 at 6; 145 at 7; 158 at 21), the frequency and timing of last-minute bookings and assignment changes (*See, e.g.,* Docs. 135-6 at 10; 135-9 at 13; 132-6 at 6; 145 at 8; 158 at 29–30), the response time actually required to report for tours (Docs. 145 at 5, 9; 158 at 30), the extent to which guides could engage in meaningful personal pursuits (Docs. 145 at 9–10; 158 at 19, 32), and whether and how the discipline policy enforced continuous availability (Docs. 145 at 5, 10; 158 at 13, 33, 36). Resolving those disputes would require the court to weigh competing evidence and assess credibility. *See Anderson*, 477 U.S. at 255; *see also Berry v. Cty. of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994) ("Whether and to what extent employees are able to use on-call time for personal activities is a question of fact," as is "[w]hether there was an agreement between the employer and the employees that employees would receive compensation only for actual work conducted while on-call[.]"). Because these factual disputes are material to whether guides could use waiting time for their own purposes, plaintiffs' motion for partial summary judgment is denied as to between-tour waiting time.

### B. Compensability of Monitoring the Gantt

Plaintiffs move for summary judgment that time spent monitoring the Gantt scheduling system is compensable. (Doc. 144 at 16–18.) Pink Jeep moves for summary judgment in the reverse direction, arguing Gantt-checking time was at most *de minimis* and not compensable. (Doc. 146 at 14–16.)

The FLSA requires employers to compensate employees for all hours worked. *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (work includes physical or mental exertion "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer"); *Armour & Co. v. Wantock*,

- 6 -

323 U.S. 126, 132–34 (1944) (holding activities done predominantly for employer's benefit are compensable). Preliminary or postliminary activities occurring outside an employee's core tasks are compensable if they are integral and indispensable to the employee's principal activities. *See* 29 U.S.C. § 254(a)(2); *see also Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33–37 (2014). The compensability inquiry therefore turns on whether Gantt-checking is required (expressly or in practice) for Pink Jeep's benefit, whether it is intrinsic and necessary to performing the principal work of guiding tours, and whether the time involved is more than *de minimis*. *Id.* at 35; *Lindow v. United States*, 738 F.2d 1057, 1062–64 (9th Cir. 1984).

Here, plaintiffs cite evidence that guides spend at least ten to twenty minutes each day checking the Gantt, with many spending "significantly more" time. (Docs. 144 at 5; 145 at 4.) Pink Jeep trained guides to check the Gantt often, especially because their queue positions changed continuously. (Docs. 60-7 at 40; 161-1 at 34.) And in order to avoid progressive discipline for missing tours, guides needed to monitor the Gantt. (Doc. 145 at 3, 5–6, 10; 62-1 at 24–25.) As an example, one guide explained that Gantt-checking was required because "if you want to make your tour on time, you need to be checking it every half hour because it can change quickly." (Doc. 135-10 at 7.)

Pink Jeep argues guides were not required to check the Gantt at all and could (somehow) learn of assignments without frequent monitoring. (Docs. 158 at 19; 162-1 at 10.) This argument is unconvincing, especially because Pink Jeep explicitly encouraged guides to use the Gantt for frequent schedule checking. (Docs. 60-7 at 40; 161-1 at 33–34; 62-1 at 24–25.) Pink Jeep further argues that discipline was tied to missing tours rather than failing to monitor the Gantt (Docs. 146 at 15; 162-1 at 5–6), without addressing the obvious fact that the only way to not miss a tour—and thereby avoid discipline—was to be familiar with the tour schedule (*see* Doc. 135-10 at 7). Additionally, checking the Gantt appeared to be by far the most common way to understand when a guide is assigned a tour. (Doc. 135-2 at 19.) Pink Jeep identifies no clear alternative to checking the Gantt to learn of tour assignments other than "calling in"

(Doc. 62-1 at 25), which it did not encourage or train guides to do. (*See* Doc. 60-7 at 40 ("We prefer guides to use the Internet Gantt.").) Given the Gantt's vital importance in tour scheduling and Pink Jeep's strong preference that guides use it, checking the Gantt was integral and indispensable to the guides' principal work of performing tours. *Integrity Staffing*, 574 U.S. at 35; *Buero v. Amazon.com Servs., Inc.*, 61 F.4th 1031, 1037 (9th Cir. 2023).

Integral and indispensable activities like Gantt-checking are still not compensable if they are *de minimis*. *Lindow*, 738 F.2d at 1062–64. "There is no precise amount of time that may be denied compensation as de minimis." *Id*. Instead, to determine whether time is *de minimis*, the court must consider (1) "the practical administrative difficulty of recording the additional time"; (2) the aggregate amount of additional time worked; and (3) the regularity of the additional time worked. *Id*. at 1063. Claims that might be minimal on a daily basis can be substantial when aggregated. *Id.* Applying these factors, Gantt-checking time was not *de minimis*.

First, the administrative difficulty of recording Gantt-checking time appears minimal. Pink Jeep maintains a simple and straightforward policy for tracking work hours that would permit guides to easily tally their Gantt-checking time. (*See* Docs. 60-7 at 45; 62-1 at 28.) Employees also must log into the Gantt using a unique ID, raising the possibility that tracking Gantt-checking time could be automated. (*See* Doc. 135-5 at 13.) Either way, the administrative burden appears minimal.

Second, the guides' testimony shows Gantt-checking time is substantial when aggregated. (*See, e.g.*, Docs. 60-2 at 39 (at least 30 minutes to over an hour each day); 135-3 at 5 (30 minutes per day); 135-4 at 16–17 (9 hours per week); 135-5 at 13 (10-20 minutes per day); 135-6 at 18–19 (3-4 hours per week and up to 6-7 hours in the slow season); 135-7 at 16–17 (20 minutes to 2 hours per day); 135-8 at 18 (3 hours per week); 135-9 at 14–18 (around 30 minutes per day on average); 135-10 at 5 (20-40 minutes per day); 135-11 at 12 (4-5 hours per week); 135-12 at 7–9 (30 minutes up to a few hours a day); 135-13 at 4–5 (1-2 hours a day); 135-14 at 4 (30-90 minutes per day).) And

although it might be challenging to determine the *exact* time spent checking the Gantt, it appears possible to "reasonably determine or estimate the average time." *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1059 (9th Cir. 2010).

Pink Jeep identifies extremely limited and somewhat misleading testimony to support its argument that Gantt-checking time was *de minimis*. For instance, Pink Jeep highlights one guide who estimated he only spent five to ten minutes per day checking the Gantt during peak season (Doc. 132-10 at 11), but neglects to mention that the same guide on an "average" day would spend nearly thirty minutes checking the Gantt. (Doc. 135-9 at 14–18.) The two other guides cited by Pink Jeep estimated they still checked the Gantt fifteen to twenty minutes per day. (Docs. 132-6 at 26; 132-7 at 10.) Although there is no set threshold for what constitutes *de minimis* work, courts regularly determine that more than ten minutes per day exceeds the *de minimis* threshold. *See Lindow*, 738 F.2d at 1062–63 (collecting cases). Based on the testimony of the guides, there is no dispute of fact that guides spent at least ten to twenty minutes per day checking the Gantt, and often substantially more.

Finally, the record indicates the time spent checking the Gantt occurred with regularity. Uncompensated work occurs with "regularity" when it happens routinely as part of the job (*e.g.*, each shift), whether or not it takes the same number of minutes each time. *See Cadena v. Customer Connexx LLC*, 107 F.4th 902, 913 (9th Cir. 2024) (treating work as regular where employees were required to perform it every shift and explaining that day-to-day time variations bear on the administrative difficulty of recording, not regularity). Here, guides checked the Gantt every workday and were implicitly required to do so given Pink Jeep's policy they would be punished if they missed a tour. *See Rutti*, 596 F.3d at 1059. The *Lindow* regularity prong—just like the aggregate amount and administrative difficulty prongs—is satisfied in favor of the guides.

Based on the evidence, no reasonable jury could find Gantt-checking was not integral and indispensable to the guides' work, nor could it find the aggregate time spent was *de minimis* or too difficult to calculate. Accordingly, time spent checking the Gantt is

compensable. Any dispute as to the precise amount of compensable time goes not to liability but to damages. Plaintiffs' motion for summary judgment on this issue is granted, and Pink Jeep's is denied.

### C.  Pink Jeep's Motion for Summary Judgment

Pink Jeep also seeks summary judgment arguing plaintiffs cannot prove damages, "gap time" is not recoverable under the FLSA, Slepian's Arizona wage statute claim fails for lack of a "reasonable expectation" of payment for the disputed categories, and treble damages are not available due to a reasonable good-faith dispute. (Doc. 146 at 2.)

### i.  Damages Computation

The parties disagree not only about the amount of damages, but also about how they may be proved. Under the FLSA, a plaintiff bears the initial burden to prove he performed work for which he was improperly compensated and to produce sufficient evidence to show the amount and extent of that work "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Where the employer's records are inadequate or inaccurate, an employee need not prove damages with absolute precision; instead, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or evidence negating the reasonableness of the employee's inference. *Id.* at 687–88. At summary judgment, the question is whether the non-movant has produced admissible evidence from which a reasonable jury could find uncompensated work and approximate damages under this framework. *See Celotex*, 477 U.S. at 322–24.

Rule 1006 permits parties to prove damages using summaries of voluminous evidence that cannot be conveniently examined in court, provided the underlying materials are admissible and were made available to the opposing party. Fed. R. Evid. 1006; *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984). Separately, testimony based on "scientific, technical, or other specialized knowledge" must satisfy Rule 702, and a party may not evade Rule 26's disclosure requirements by offering expert opinion as lay testimony under Rule 701. Fed. R. Evid. 701–02; *United*

*States v. Figueroa-Lopez*, 125 F.3d 1241, 1245–46 (9th Cir. 1997); Fed. R. Civ. P. 26(a)(2). If a party's damages calculation depends on specialized analysis rather than straightforward arithmetic based on personal knowledge and admissible records, the party must provide expert testimony admissible under Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). And where damages evidence is not properly disclosed under Rule 26, Rule 37(c)(1) authorizes exclusion unless the failure was substantially justified or harmless. Fed. R. Civ. P. 26(a)(1)(A)(iii), 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Here, Pink Jeep argues plaintiffs cannot establish damages. (Docs. 146 at 5–12; 164 at 4–6.) On this record, however, Pink Jeep's damages arguments do not entitle it to judgment as a matter of law. Slepian (or any individual opt-in) could obviously prove damages through testimony and payroll records. *See Mt. Clemens*, 328 U.S. at 687–88. Nonetheless, Pink Jeep's briefing challenges both the admissibility and reliability of plaintiffs' disclosed damages computations and the sufficiency of plaintiffs' damages proof more generally. In Pink Jeep's view, defects in the computations counsel disclosed and the absence of expert testimony preclude plaintiffs from proving damages at all. Because these disputes about plaintiffs' calculations go to the amount and permissible scope of recovery rather than a complete absence of proof, summary judgment is denied.

First, plaintiffs need only produce evidence from which a jury could find uncompensated work and approximate its extent "as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. Here, plaintiffs point to guides' representative testimony regarding uncompensated between-tour waiting time and Gantt-checking time, which together with payroll and timekeeping records would permit a jury to estimate any resulting underpayment to guides. (Doc. 160 at 10.) Crediting such evidence, a reasonable jury could approximate damages despite disputes about exact amounts. *See Mt. Clemens*, 328 U.S. at 687–88; *Brock v. Seto*, 790 F.2d 1446, 1448–49 (9th Cir. 1986) (explaining employers cannot avoid back-wages liability because damages are imprecise

when the imprecision stems from employer recordkeeping failures). In short, the possibility plaintiffs' estimates may be imperfect or rely in part on representative testimony does not defeat the claim at summary judgment. *See Mt. Clemens*, 328 U.S. at 687–88; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455–57 (2016) (approving representative proof where each class member could have relied on the sample in an individual action); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 411–13 (6th Cir. 2017) (holding representative testimony can be used to award back wages for similarly-situated employees).

Neither has Pink Jeep shown that plaintiffs' damages theory necessarily depends on expert testimony. Plaintiffs' disclosed damages calculations use testimony-derived estimates of off-the-clock time and payroll data to compute unpaid wages and minimum-wage shortfalls. (Doc. 147-1 at 37–38.) This is straightforward arithmetic applied to business records and testimony about hours worked, not a technical model requiring specialized analysis. *See* Fed. R. Evid. 701–02; *cf. Daubert*, 509 U.S. at 589–95. Pink Jeep's challenges to particular assumptions and inputs may affect the weight or admissibility of specific damages figures, but they do not establish that expert testimony is required.

Pink Jeep does correctly identify certain baseline overtime-calculation errors. Overtime must be computed by workweek, the FLSA does not permit averaging hours over multiple weeks, and payments for periods when no work is performed (including vacation or sick leave) are not hours worked for overtime purposes. 29 U.S.C. § 207(a)(1); 29 C.F.R. §§ 778.104, 778.218–19. But again these errors go to the proper measure of damages, not to whether plaintiffs can prove them at all. Pink Jeep's arguments may support recalculating and narrowing the amount, but they do not establish plaintiffs lack any evidence from which a jury could find uncompensated work and approximate damages. *See Mt. Clemens*, 328 U.S. at 687–88; *Brock*, 790 F.2d at 1448–49.

Finally, Pink Jeep's concerns about impermissible stacking go to the permissible

categories of recovery, not whether a jury could award damages at all. Plaintiffs cannot obtain duplicative recovery for the same unpaid wages under overlapping federal and state theories, *see Rios v. Lux Interior & Renovation LLC*, No. CV-23-01686-PHX-DJH, 2025 WL 871021, at *10 (D. Ariz. Mar. 20, 2025), but that principle only supports limiting the final award, not granting summary judgment to wipe out damages evidence entirely.

In short, Pink Jeep's damages criticisms go to the admissibility of particular summaries, the proper measure and scope of recovery, and the weight of plaintiffs' proposed calculations—not to whether plaintiffs can present sufficient evidence for a jury to award unpaid wages at all. Accordingly, Pink Jeep is not entitled to summary judgment on the grounds that plaintiffs cannot establish damages.

### ii.  Gap Time Recovery

Pink Jeep seeks summary judgment arguing plaintiffs' claim depends on an impermissible gap-time theory. The FLSA requires covered employers to pay employees a minimum wage and to pay overtime compensation at one-and-one-half times the employee's regular rate for hours worked in excess of 40 in a workweek. 29 U.S.C. §§ 206(a), 207(a)(1). "Gap time" is uncompensated "time that is not covered by the overtime provisions because it does not exceed the overtime limit" and "is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999). Courts commonly distinguish between "pure" gap time (unpaid straight-time work in non-overtime workweeks) and "overtime" gap time (unpaid straight-time work in workweeks where the employee worked more than 40 hours). *Gomley v. Crossmark, Inc.*, No. 1:13-CV-00420-BLW, 2015 WL 1825481, at *6 (D. Idaho Apr. 22, 2015).

The Ninth Circuit has not definitively resolved whether the FLSA permits recovery of gap time as a standalone theory, but it has recognized the concept and noted the doctrinal uncertainty. *Adair*, 185 F.3d at 1062 n.6. The prevailing view is that pure

gap-time claims are not cognizable where employees are still paid a minimum wage when their wages are averaged across their actual time worked. *Id.*; *Gomley*, 2015 WL 1825481, at \*6 (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201–02 (2d Cir. 2013)); *see also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014) ("Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages").

Courts are more divided on the viability of overtime gap-time claims under the FLSA. The Ninth Circuit has not directly addressed the issue, and some Ninth Circuit district courts have declined to recognize them. *See, e.g., Canh Le v. DirecTV, LLC*, No. 2:16-CV-01369-SVW-AS, 2017 WL 6939087, at \*19 (C.D. Cal. Nov. 2, 2017). But absent clear authority on the point, this court recognizes the viability of overtime gap-time claims because doing so is more consistent with *Skidmore* deference, FLSA's statutory purposes, and Ninth Circuit precedent arising in an analytically-analogous context. *Sanchez v. Republic Servs. Customer Res. Ctr. W. LLC*, No. CV-24-02499-PHX-KML, 2025 WL 1248931, at \*3–5 (D. Ariz. Apr. 30, 2025) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Donovan v. Crisostomo*, 689 F.2d 869, 876 (9th Cir. 1982); *Conner v. Cleveland Cnty., N.C.*, 22 F.4th 412, 425 (4th Cir. 2022).

Plaintiffs may not recover for pure gap-time wages, *see Adair*, 185 F.3d at 1062 n.6, but their theory is not limited to that category. Plaintiffs allege Pink Jeep required them to perform uncompensated work during scheduled workdays, including between-tour waiting time and Gantt-checking, and that those uncompensated hours (when included) pushed some workweeks over forty hours or dropped their effective hourly rate below the minimum wage. (Docs. 147-1 at 39, 48; 160 at 14; 145 at 7.) On this record, and drawing all reasonable inferences in their favor, a reasonable jury could return a verdict for plaintiffs on their overtime-gap claims. Accordingly, Pink Jeep is not entitled to summary judgment on a gap-time theory.

### iii.  Arizona Wage Claims

The parties dispute whether the compensation Slepian seeks qualifies as "wages"

that were "due" under Arizona law, particularly in light of competing evidence about Pink Jeep's policies and promises. Arizona's wage statutes authorize an employee to bring a civil action when an employer fails to pay wages due. A.R.S. § 23-355(A). Wages are defined as "nondiscretionary compensation due an employee in return for labor or services rendered . . . for which the employee has a reasonable expectation to be paid." A.R.S. § 23-350(5). An employee's "reasonable expectation" of payment may be "defined by contract," including an implied agreement "based upon [the parties'] past dealings." *Zavaleta v. OTB Acquisition LLC*, No. CV-19-04729-PHX-JAT, 2021 WL 824419, at *5 (D. Ariz. Mar. 4, 2021). A reasonable expectation may also arise from the employer's "policy or practice" of making the payment. *See Morgan v. Freightliner of Ariz., LLC*, No. CV-16-00498-TUC-CKJ, 2017 WL 2423491, at *7 (D. Ariz. June 2, 2017). Additionally, a specific promise of compensation not memorialized in a contract, when coupled with continued performance on that promise, can establish a reasonable expectation of payment. *Schade v. Diethrich*, 760 P.2d 1050, 1062 (Ariz. 1988). Therefore, the crucial question in evaluating an Arizona wage claim at summary judgment is whether a reasonable jury could find that the employee is seeking compensation owed for labor or services rendered under conditions that gave him a reasonable expectation of being paid.

The parties agree that only Slepian's individual claim for failure to timely pay wages is at issue. (Docs. 146 at 16–17; 160 at 20–21.) Pink Jeep argues Slepian cannot satisfy Arizona's "reasonable expectation" element because its policies expressly stated guides would not be paid for between-tour waiting time or related off-the-clock activities (Docs. 73-3 at 3–4; 60-7 at 46; 161-1 at 35), and Slepian read and understood those policies at the outset of his employment (Doc. 146 at 17). Pink Jeep also relies on evidence that Slepian routinely reviewed his time records without reporting discrepancies. (*See* Docs. 161-1 at 35; 73-3 at 3.)

Viewing the evidence in the light most favorable to Slepian, a reasonable jury could find Pink Jeep made a broader promise he would be paid by the hour for all hours

worked. (*See* Docs. 62-1 at 14 (Pink Jeep human resources director stating guides are "paid by the hour for all hours worked"); 60-7 at 56 (offer letter indicating hourly pay and non-exempt status); 60-2 at 48 (Slepian testifying he was an hourly employee); 60-6 at 18 (employee manual outlining hourly work for non-exempt employees and guaranteeing overtime pay according to applicable federal and state laws)).) Under Arizona law, specific promises of compensation like these, coupled with continued performance on those promises, can establish a reasonable expectation of payment. *Schade*, 760 P.2d at 1062. At minimum, Slepian has raised a material factual dispute as to whether he reasonably expected timely payment of overtime wages if his total compensable hours in a workweek exceeded forty once all hours worked are properly counted. Accordingly, Pink Jeep is not entitled to summary judgment on Slepian's Arizona wage claim.[2]

### iv.  Treble Damages

Arizona law permits treble damages in some unpaid-wage cases. Under A.R.S. § 23-355(A), an employee may recover "an amount that is treble the amount of the unpaid wages" when an employer fails to pay wages due, but only as a punitive, discretionary remedy that is not available where the employer's withholding was based on a reasonable good-faith dispute. A.R.S. § 23-352(3); *Sanborn v. Brooker & Wake Prop. Mgmt.*, 874 P.2d 982, 984 (Ariz. Ct. App. 1994). Treble damages are generally reserved for circumstances where an employer delays payment without reasonable justification or seeks to defraud employees of earned wages. *Crum v. Maricopa Cnty.*, 950 P.2d 171, 175 (Ariz. Ct. App. 1997); *Wood v. Nw. Hosp., LLC*, 473 P.3d 729, 737 (Ariz. Ct. App. 2020). Treble damages are not recoverable if the employer withheld wages based on a good-faith belief that it owed nothing more. *Sanborn*, 874 P.2d at 984; *see also Olson v. McKesson Corp.*, No. CV-04-2428-PHX-SMM, 2006 WL 2355393, at *3 (D. Ariz. Aug. 14, 2006).

Pink Jeep points to evidence that could demonstrate its good faith. (Docs. 60-7 at

---

[2] Slepian's minimum wage claim under A.R.S. § 23-362 *et seq.* also survives; Pink Jeep did not move for summary judgment on that claim. (*See* Doc. 160 at 23.)

49, 51; 147-1 at 3–4.) But viewing the evidence as a whole in the light most favorable to Slepian, the record permits a contrary inference that Pink Jeep's broader hourly-pay promise created an expectation Slepian would be paid for all hours worked, and that Pink Jeep nevertheless withheld wages due. (*See* Docs. 62-1 at 14; 60-7 at 56; 60-6 at 18.) On this record, the court cannot determine as a matter of law whether Pink Jeep's withholding reflected a reasonable good-faith dispute or an unjustified refusal to pay wages due. *See* A.R.S. §§ 23-352(3), 23-355; *Wood*, 473 P.3d at 737–38. Accordingly, summary judgment is denied as to treble damages.

**IT IS ORDERED** plaintiffs' motion for partial summary judgment (Doc. 144) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Pink Jeep's motion for summary judgment (Doc. 146) is **DENIED**.

**IT IS FURTHER ORDERED** no later than **March 16, 2026**, the parties shall file a joint statement identifying the dates they are available for trial from **October 6, 2026**, to **November 25, 2026**. The parties must identify each five-day period (excluding Mondays) during that time period they are available. If a party or counsel has a conflict during that period, the joint statement must list the conflict, the specific dates of the conflict, and, if the conflict is a trial in another court, the likelihood the trial will proceed as scheduled. Once the parties identify the dates they are available, the court will set deadlines for the filing of pretrial documents.

**IT IS FURTHER ORDERED** the parties shall contact Magistrate Judge Kimmins's chambers within **three days** of this order to schedule an additional settlement conference.

Dated this 6th day of March, 2026.

_____
**Honorable Krissa M. Lanham**
**United States District Judge**